320-201-WC Aureus Medical Group Appellant v. Illinois Workers' Compensation Commission Andrea Tyler-Appley. Okay, Mr. Slaven, you may proceed. Thank you, Your Honor. May it please the Court, Counsel for Mr. Tyler, I am Mark Slaven representing Aureus Medical Group. This issue before you that's dispositive about this workers' compensation case concerns Illinois jurisdiction. The question is, where was a contract of hire formed? Where was the last act necessary to allow this contract to spring to life, occur? At all times, please note and responsibility for the accident occurred by Nurse Tyler. What it did and accept is payments under Indiana law. Mr. Blatt comes in and says we seek workers' compensation benefits in the state of Illinois because the contract of hire occurred in Illinois. What this case shows is that Aureus is a Nebraska corporation, Omaha, Nebraska corporation, has no physical presence in the state of Illinois and had a client in South Bend, Indiana that needed an operating room nurse. And what happened is, through solicitation, the Nebraska corporation finds Nurse Tyler, they express an interest, it is asked Miss Tyler to contact the Indiana hospital to see if Indiana hospital likes her and she likes them. And the record establishes that she was interested. Nurse Tyler was in Memorial Hospital in South Bend, Indiana, also expressed an interest. With that said, the crux of this case is this 10-page document called Conditions of Employment. Miss Tyler received this on the internet from Omaha, Nebraska at her Lockport address and executes her signature on January 28, 2016. The commission's decision, which is an adaptation of the arbitrator's decision, says when that signature was affixed, that constituted a binding contract, it formed it, and that is the last act necessary. There are major problems associated with that event. One problem, and the disposition of this case could possibly take two different paths. In my experience before you, when I say two paths, you might come up with four in your considerations. But these two paths are as follows. One, that you decide that this case needs to be remanded for the commission's consideration of what it meant by a last act in the contract of employment because the commission said that under parole evidence, this 10-page contract should not be explained or elaborated by the account manager. Mr. Slavin, let me pick up on that point. Let's assume you're absolutely correct. There's nothing that should have come in to explain the contract. It's interesting because if you look at the agreement between the claimant and the company, the contract repeatedly is referred to as the claimant being an employee. And if you look at the first part of the contract, it says, I understand that I am an employee of respondent. Does it not say that? I agree it does. Okay. Well, isn't there a difference then? Are you conflating being hired by a company and being employed by them versus being assigned out to another place such as a hospital? Tell us why was she not an employee of the corporation? That's because she couldn't speak because this contract specifically said the offer of employment is for a position in Indiana and a pre-wet requisite that is fundamental is that you have a nursing license from the state of Indiana. At the time she accepted these terms, one of the conditions were that you'd have state licensing, your honor. And unbelievably the commission said state licensing is a ministerial act. Well, they also said it was a condition subsequent. They answered that question. They said these things were not conditioned precedence. They were conditioned subsequent. Well, it goes to the label and that's why it's didn't over review. And I respectfully disagree. It is not a condition subsequent to go ahead and fill out the applications, cross your fingers and seek a property right from the state of Indiana thinking that all I have to do is magically fill out a form and I am bequeathed a license. As I said, your honor, that is a property right. I have clients that are in jail have been had their license revoked over my 30 years and calling it a ministerial act is a condition subsequently short shrift is significant. Does the claimant need to have an Indiana nursing license to be an employee of the respondent? Yes, because this offer was expressly limited to this office, this offer. And as you will know, by reviewing the record and the testimony, this contract of employment offer had to be extended because she could not obtain the Indiana license timely. And can you can you back up an initial question? What do you believe it means that when the employee signs an agreement says I am, I understand I am an employee of respondent, the company, quote unquote, what does that mean to you? Well, that goes to my point that is this Aubrey Baker was refused to be able to testify. And yes, it's a real problem. Because under the contract, your honor, it says, I understand this investigation will result in a consumer verifying my professional licensure or certification. I acknowledge that such information may be used to evaluate whether I am an appropriate candidate for employment. This contract is ambiguous on its face. And that's exactly why Miss Baker was asked to have questions presented to her, your honor. And that's when a non lawyer, former arbitrator goes ahead and says, I sustain Mr. Block's objection is parole evidence. This contract speaks for itself. It does not. It is ambiguous. It does call her an employee. But that's like in every other area of law when we deal with independent contractors, titles and words are terms of art. And what does it mean to be a lawyer? What does it mean to under the standards of law? You go into the facts and does it check all the boxes and calling somebody or labeling someone an employee with conditions precedent doesn't make that person your employee. So I feel that there has been a huge problem with the commission calling it a obligations associated with professional licensure, your honor. And so by saying it was a condition subsequent, there are multitudes of variables associated with being able to have a license promulgated for yourself to oneself. And it didn't occur. Now, as far as what in your opinion was the last act necessary to form the contract that was under this? There wasn't it wasn't defined what would be the last act necessary, your honor. It was circumstances that dictated it. And that's why I can give counsel to clients around the United States. What is their likely? How is it all? They're likely to be such liability. I look to the facts of the case. And in this case, it might have been a little bit of a crapshoot, your honor. What happened? She needed a background check, a drug and alcohol test, and a licensure to issue. And under the facts, which are not in dispute in this case, we know that those three ticklers, these three events, it was the license that issue last. So it was by facts as developed. It wasn't under the contract, how you interpret what was the last act necessary under the contract. It is circumstances of events that dictated the result. It's the application of the facts, which is the license was the last thing to issue. She passed the drug and alcohol screen, she passed the TB test, she passed the background test, but she did not have that license from the state of Indiana. That is what prevents this last act to the formation of a contract. There always has to be offer acceptance, consideration, that's fine. If you got terms of the contract, if a contract doesn't come into fruition until something is satisfied, then it's a condition proceeding to the formation of a contract. And the contract is formed when it's satisfied. What is it in this case? What is the condition proceeding? No, what is the last act necessary to the formation of this contract? And where did it occur? There was actually what I say we argue is that licensure to be issued or actually under the terms of the contract, page two, it says at the time I report for my assignment at the client company, I'll be prepared to produce evidence of my identity and original credentials, including state license that page two of this of the agreement of the contract. And I argue that really the last act necessary was to physically show up and say I am here for work and I am ready, willing and able with my license in hand. So Mr. Slavin, who is the employer here? Is it the hospital or is it your client? We keep dancing around that issue. Well, we know that under who's the employer is there is a borrowing, loaning employment relationship. I don't know what it's called under state of Indiana law, your honor. But under Illinois law, I would be borrowing, loaning, of course, in the state of Illinois. So Aureus is a employer. Who's Miss Baker? Who's Miss Baker? Audrey Baker. Aubrey Baker is the account manager for Aureus who was facilitating the communications to facilitate Miss Taylor to work at South Bend Indiana Hospital. And she testified that if, is this correct, that if the claimant did not sign, the individual does sign the contract with the company, the relationship goes no further. The individual cannot be placed in any assignment with one of respondents clients unless she signs the contract. So if you have to sign the contract with her, then the company is the employer, not the hospital. Well, I agree with you that Aureus is paying her bill. The contract, how she earns her living is agreed. But there's conditions in order for this contract to spring to life. And they're not conditioned substance. Those are just mere filaments of your duties. Aren't you using conditions for placement with conditions of employment, which is the whole crux of the matter. There's a difference between hiring somebody, having a contract to hire them and placing them somewhere. Well, the placement and the offer, your honor, is specifically only for Indiana Operatory Theater. And how is it that you could be our employee with that offer without possessing the license? I can't. It's illegal. It's criminal. Well, if you can't, then you could place her in someplace else. The contract goes with you. But there would be a second agreement offer. That's creating facts that do not exist. That is a hypothetical. And I know that that's probably where Mr. Block wants to go. But we're stuck with the record. We're stuck with the actual four quarters of this document. And there's only one offer. While the territory might be defined the entirety of the United States, this offer of employment, labeled as a condition of employment, goes to one space only. One space only. So if there was going to be a second, if there's going to be somewhere else, then there was going to be a new contract, a new agreement. So, again, I submit to you that calling this a... So let's go back to fleshing that out. This agreement, for the reasons being discussed and asked about, is ambiguous on its face. The record should be developed. Ms. Baker's testimony should be allowed to be considered further by the commission, not disregarded. Explain what it means that it says you're a candidate for employment versus you're our employee. That's on the face of this agreement, your honors. That is law school, for me, 101. When the contract creates that ambiguity, it's not something that just... Well, who drafted this contract? My client drafted the contract. And your client says, I understand, the employee says, I am an employee of the respondent. I am an employee of the respondent. What's ambiguous about that? There's nothing... That's not what's ambiguous. It's when the contract also provides, I am a candidate for employment. That's what the contract also says. So you can't just pick and choose what words one applies. It's the entirety, that's how we interpret contracts. So it's the entirety of the agreement that we look to, to determine what is the right rules of evidence to apply, to determine what the right result is. And I submit to you, without the commission having considered why this ambiguity, why you call her an employee, and why do you also say that she's a candidate for employment, and significantly to get your license to be a nurse? Why won't you consider that commission? That's front and center, relevant, germane. Mr. Slaven, the red light has gone off. You'll have time and reply. Thank you, Your Honor. Mr. Block, you may respond. Thank you, Justice Aldrich. May it please the court and Mr. Slaven, good afternoon. I represent the claimant, Andrea Tyler, who was an OR nurse. I respectfully submit, and I'll try and keep my arguments brief, that the arbitrator and the commission got it right in this case when they said there are basically just two questions. Number one is, what is the contract of hire? And number two is, where was it made? Because we're dealing with an executed contract of hire. This person was actually working for her employer. And as far as what the issue is before this court, I think it's a very simple one, is whether there is evidence in the record to support the finding of the commission that the contract of hire was the document, Petitioner's Exhibit 1, and the Baker Deposition Exhibit 2 and 2A. 2A was a one-page modification where they changed the assignment dates, where both the claimant and Ms. Baker agreed that the offer of this contract was presented to Ms. Tyler, a resident of Illinois since 1976 in Illinois, and it was accepted when it was electronically signed by her at the public library in Lockport, Illinois, which signature had the effect of a handwritten signature by another agreement that she had signed, which is in the document. And I don't believe I ever saw a signature of the employer on the document. Okay. But to be clear, the commission found that act to be the final act in forging the contract. Yes, because it was the respondent, the employer's document, and that was what they forwarded to her, and that was the only document that any party to this case, either by the evidence or the contentions in any brief, suggests she was working under at the time she was injured. Is there anything about that document that's ambiguous? Well, first of all, the document isn't ambiguous, and we cited the Sadler case, which states that if there is an ambiguity, it's construed against the drafter. But in any event, where that language appears about adequate candidate for employment is under background checks, and it's very consistent with the fact that she's an employee, because a background check is to consider whether a person, it's a background check of whether a person is an adequate candidate for employment. And that can actually be done before a person is hired, after a person is hired. It can be done by contract after a person actually starts their job. And if the employment background check comes back negatively, they can be escorted off the premises. The fact that they are doing a background check to check whether the person's an appropriate candidate for employment is not necessarily inconsistent with their contract language stated multiple times that she was an employee of Aureus upon signing this contract, which was a national contract with specific assignments, as Justice Hudson stated. And in answer to the question, who was she employee of? One of the things that is in here specifically is that, and I got to find it right here very fast, is that the 1, 2, 3, 4, 5th paragraph, Tom, I understand that I am an employee of Aureus working on temporary assignments, whether the assignments are for four hours, up to 13 weeks or longer, or for an indefinite time frame. I am not an employee of Aureus' client. Specifically, I'm not an employee of Aureus' client. I agree that working for Aureus requires accepting assignments at a variety of locations, possibly nationwide. I also understand that the entire United States is my labor force. So I don't think the contract could be any clearer. And again, that is the contract all parties agree she was working under at the time she was hurt. And again, as far as answering your question about the signature of contract, under section 1B2, a contract can be expressed as I respectfully submit it as here, and especially when the parties operate under whether one of them signs it or not, or it can even be implied. You don't even need a contract. And then if it's an implied contract, you have to figure out where the contract was made. And that's probably harder. I think in written contracts, probably as easy as it gets, because when a person signs it, the obligations are fixed. The Mahoney case actually makes it clear that the only issue is where the contract was made, nothing else. And that's what the commission found. I mean, we're dealing with a 62-year-old OR nurse. She had a career-ending shoulder injury at this hospital in South Bend. She'd been an Illinois resident since 1976. She was solicited by the respondent, a gentleman named Ben in sales, to sign this employment agreement. And then an Aubrey Baker she was transferred to, who was their account manager. Ms. Baker at page 72 of her debt said that this document was presented to Ms. Tyler. It was an offer of employment or conditions of employment in Illinois, undisputed, and that it was electronically signed by her. This is page 46, which has the same effect as a handwritten signature in Illinois, undisputed. The contract provisions themselves, you're very familiar with them, so I'm not going to restate them, but they make her an employee of Aureus Contract. And there is advantages to them to make that, because they want a stable of nurses. They are a staffing company. They don't want her to go to another company. And so theoretically, you could make getting an as was the interview with the hospital, which had to be successful, as was passing the competency test. They say, we won't send you this until you present us an Indiana license. But the problem for them is she's licensed in Illinois. She can go somewhere else and get work somewhere else. And they want her in the stable. So this is accomplishing the purposes of the staffing company. And nursing staffing companies are much more common these days than ever. That agreement is complete in every aspect of an employment agreement. And it requires things beyond just the hospital in South Bend. It requires communications for future assignments with the staff person at Aureus. It does make clear she's not an employee of the hospital. Is this a fairly simple thing where she's an employee of this Omaha company who's in the Yes. Okay. So that's so the employment contract is with the Omaha company, correct? Absolutely. It makes very clear she's not an employee of the hospital in the first page of the contract. So all of these conditions of licensure being accepted by these hospitals based on personal background checks are conditions to an assignment of an employee who is an employee of the Omaha company. Absolutely. So Yes. But basically, I think what's happening is that Aureus has tried in their brief to rewrite their contract to say, this is only an Indiana contract when clearly biased language, it's not. And they're basically asking you to rewrite section 1B2 because the only question in section 1B2 is where was the contract made? And it was clearly made in Illinois and both witnesses agree to it. So that is the crux of it. The fact that they're going to do a background check to see whether he's an adequate candidate for employment isn't inconsistent with that because that's what a background check does. And that can happen at any time during the course of hiring an individual, including after hiring. So basically, that's it. As far as showing up for work, it's in our brief. It's contrary to the Chicago Bridge and Iron case, the Hunter case. Showing up for work is not making a contract. The contract was made either when it's written. And again, I think it's the easiest of the two, when it's signed or when it's oral or when it's applied, when there's an offer and acceptance, something that makes the last act to make a binding agreement. And all the conditions that they talk about are conditions arising out of the agreement because the binding agreement exists. So basically, that's in a nutshell. As far as Ms. Baker's vital testimony in this case, let me refer to the reply brief, page 10, where they state that the employee points specifically to Ms. Baker's deposition testimony in which she suggested that the Indiana license as administrative. However, Ms. Baker is a layperson and this interpretation is inconsistent with the plain reading of the act. In other words, they really want it both ways. What she does know about is what it takes to get an Indiana license because that's what she does for work. She helps people through the process. They don't want you to believe that testimony, that it's ministerial. Yet her testimony as a language of this agreement whatsoever, other than to fill in the assignment parts of it, yet that's absolutely vital for the commission to make this decision when the plain and ordinary language of the contract is in front of them and the contract really has no ambiguities whatsoever. I mean, that's basically the case in a nutshell. As far as the importance of issuing the license, I think if I were to call somebody at the Indiana Board of Nursing and say, thanks for making this contract for us when you issued a license, I'd get a big, huh? Because that doesn't make a contract. It produces a license. Do you need a license to be a nurse in Indiana? Yeah, you do. But that doesn't conclude a contract before as happens very frequently as Ms. Baker testified to. So I think as well within the abuse of discretion standard that the commission said, we don't need to hear from Ms. Baker to decide this case. And again, I think the issue before you is whether there's evidence in the record. I've cited the Saddler case that really deals with all the issues on contracts. You know them anyway. I'm really done unless you have any questions for me. Questions from the court? No, I don't see any. Thank you, Mr. Block. Thank you, everybody. I wish you a good afternoon. You too. Mr. Slavin, you may reply. Thank you, Your Honor. A couple points. One, what Mr. Block ignored is on page nine of 10 of the 10 page agreement, which says, my assignment, and it's specifically only referencing work to be performed in South Bend, Indiana, period. Out of all his comments, the last two sentences were giving some indication of the importance of a licensure in the state of Indiana. This is the crux of this offer of employment. That's what this is. It is a contract with an offer of employment with conditions. That's the plain reading of this contract. Mr. Block could not articulate to you why there is, he did agree that there was an ambiguity, and he says it's construed against traffic. Excuse me. That's why parole evidence should be allowed to explain, not take away from what this contract says, but explain it. It goes to marketing. As Mr. Block said, this is an industry where you want to keep a staple of employees. It's hard getting qualified people. You want to give them the impression that you are with us, but there is a condition for you to be placed in employment, and that is a state of Indiana license. That doesn't change in this case. We talked about last act necessary. That's still a prerequisite for this contract formation, and signing and saying, I want to work in the state of Indiana, and I want to work for you, doesn't fulfill these contract formations because of the conditions that we already articulated. Without any questions, I have no further comment other than to say, please, we're not certain about this being on its face. Through your interpretation, a contract that required the last act necessary to be an Indiana license, allow it to be remanded for the back finder to consider what this agreement was, not prevent consideration by plural evidence. Thank you. Thank you, counsel, both for your arguments in this matter. We take them under advisement. The written disposition will issue. The court will stand in recess until 9am.